**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:25-CR-00108-KKC**

**UNITED STATES OF AMERICA**                                               **PLAINTIFF**

V.                          **UNITED STATES'S SENTENCING MEMORANDUM**

**HAO QIU**                                                     **DEFENDANT**

\*   \*   \*   \*   \*

The United States of America hereby states its position concerning the Sentencing Guidelines applicable to this case and an appropriate sentence under 18 U.S.C. § 3553(a). For the reasons stated below, the United States asks the Court to impose a sentence that includes a term of imprisonment of 33 months, the high end of the recommended Sentencing Guidelines range.

The Defendant, Hao Qiu, pleaded guilty to one count of violating the International Parental Kidnapping Crime Act ("IPKCA"), 18 U.S.C. § 1204. Based on this plea, the United States Probation Office determined that Qiu's Sentencing Guidelines range is 27 to 33 months. [*See* Presentence Investigation Report ("PSR") ¶ 60.] The recommended guidelines range incorporates the count of conviction and two pseudo-counts, which collectively account for Qiu's kidnapping of his three children. [PSR ¶¶ 15-16.] The Probation Office calculated a total offense level of 18 for each count and pseudo-count, based on: (i) a base offense level of 14, pursuant to U.S.S.G. § 2J1.2(a); (ii) a 3-level

enhancement for substantial interference with the administration of justice, under U.S.S.G. § 2J1.3(b)(2); (iii) a 2-level enhancement because the victim of each offense was a vulnerable victim, pursuant to U.S.S.G. § 3A1.1(b)(1); (iv) a 2-level enhancement for abuse of a position of private trust, pursuant to U.S.S.G. § 3B1.3; and (v) a 3-level reduction for timely accepting responsibility, pursuant to U.S.S.G. § 3E1.1. [*See* PSR ¶¶ 17-38.] Each count groups with the others as "embod[ying] conduct that is treated as a specific offense characteristic in . . . the guideline applicable to another of the counts." [*See* PSR ¶ 16; U.S.S.G. § 3D1.2(c).]

### I.    Applicable Sentencing Guidelines

### A.    Objection No. 1:  Substantial Interference with the Administration of Justice

A defendant whose conduct substantially interferes with the administration of justice receives three-level enhancement. U.S.S.G. § 2J1.2(b)(2). The Application Notes list several factors that warrant this enhancement, including "the unnecessary expenditure of substantial government or court resources" because of a defendant's conduct. *See id.* app. n. 1. This is not an exhaustive listing, and "other acts can also serve as the basis for this enhancement if they are "similarly or even more disruptive of the administration of justice." *United States v. Houtar*, 980 F.3d 268, 277 (2d Cir. 2020) (internal citation and quotation marks omitted).

In this case, Qiu disrupted the administration of justice when he defied a Fayette Circuit Court order by leaving the United States with his children. That order permitted him visitation rights with the children but required that such visits occur within Fayette

County, unless otherwise agreed by the parties in writing.  [*See* PSR ¶ 9.]  The parties agreed that Qiu would vacation with the children in Florida and return them to Fayette County in late July 2025.  [*Id.* ¶ 10.]  Instead, Qiu removed the children from the United States and fled with them.  [*Id.* ¶ 8.]

In *Houtar*, the Second Circuit observed that a defendant's removal of himself from state court jurisdiction "impaired the Family Court's ability to 'administer justice' by using its contempt power to coerce him into complying with its visitation order."  980 F.3d at 278.  Although, in that case, the defendant's flight occurred separately from his retention of his children in a foreign country, there is no conceptual difference from Qiu's actions.  When Qiu fled the United States, he prevented the Fayette Circuit Court from enforcing its order.  Contrary to Qiu's objection, flight from the consequences of a domestic court order is not necessarily inherent in a § 1204 violation.  It is independent conduct and is a sufficient basis for the U.S.S.G. § 2J1.2(b)(2) enhancement.

Separately, the expenditure of government resources required to bring the children back to the United States also justifies this enhancement.  A substantial interference enhancement on this basis must be predicated on " (1) identif[ication of] a particular expenditure of governmental resources (time or money), (2) which but for the defendant's conduct would not have been expended, and (3) was 'substantial' in amount."  *United States v. Tackett*, 193 F.3d 880, 886-87 (6th Cir. 1999).  Here, the government spent $8,677.85 to pay travel expenses required to return the children to the United States.  [*See* PSR ¶ 11.]  This was in addition to the personnel costs associated with numerous government employees working diligently toward this end.  In another international

parental kidnapping case, the Seventh Circuit affirmed application of the U.S.S.G. § 2J1.2(b)(2) enhancement on the basis of virtually identical expenses. *See United States v. Ali*, 864 F.3d 573, 574 (7th Cir. 2017). In a different context, the Sixth Circuit has affirmed this enhancement based on the costs associated with government employees' responses to false testimony about a bombing plot. *See United States v. Jarrar*, 99 F. App'x 726, 730 (6th Cir. 2004). Similarly, in this case, the government expenditures were only necessary because of Qiu's actions. These facts independently support a three-level enhancement under U.S.S.G. § 2J1.3(b)(2).

**B.    Objection No. 2:  Vulnerable Victim**

A two-level enhancement applies where a defendant knew or should have known that the victim of their offense was "unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) & app. n. 2.

In this case, the victims of Qiu's offense—his children—were each unusually vulnerable because of their young ages. The United States will present evidence at sentencing showing that the children were 5, 7, and 8 years old at the time of the kidnapping. The Sixth Circuit has previously held that 3-, 6-, and 8-year-old children "were properly deemed to be vulnerable based on their ages." *United States v. Myree*, 89 F. App'x 565, 567 (6th Cir. 2004) (affirming U.S.S.G. § 3A1.1(b)(1) enhancement in armed robbery case). Here, Qiu's young children were vulnerable to his machinations, having little ability to resist his actions or question his intentions.

Qiu objects that enhancing his sentence on this basis would be impermissible double-counting, because the victim's age is an inherent factor in a § 1204 conviction. It is true that an IPKCA victim must necessarily be "a person who has not attained the age of 16 years." 18 U.S.C. § 1204(b)(1). But double counting only occurs "when *precisely* the same aspect of the defendant's conduct factors into his sentence in two separate ways." *United States v. Golobic*, 170 F.4th 515, 522 (6th Cir. 2026) (cleaned up; emphasis added). Neither the IPKCA nor U.S.S.G. § 2J1.2 accounts for the heightened vulnerability of a younger child. For that reason, in *United States v. Matusiewicz*, 402 F. App'x 723, 728 (3d Cir. 2010), the Third Circuit rejected this double-counting argument and affirmed use of the vulnerable victim enhancement in an international parental kidnapping based, in part, on the ages of the victims. *See id.* at 728 ("[T]he ages and mental condition of the children facilitated Matusiewicz's ability to commit the crime because their vulnerability prevented them from seeking help."). In *Matsuiewicz*, the kidnapped children were each 5 years old or younger. *See id.* The young ages of Qiu's children also warrant application of the vulnerable victim enhancement.

### C.       Objection No. 3:  Abuse of Position of Trust

A two-level enhancement applies where a defendant abused a position of trust in a manner that significantly facilitated the commission or concealment of the crime. U.S.S.G. § 3B1.3. This enhancement contemplates the defendant has "substantial discretionary judgment that is ordinarily given considerable deference." *Id.* app. n. 1. The enhancement "may not be employed if an abuse of trust . . . is included in the base offense level or specific offense characteristic." *Id.*

In this case, Qiu abused his legal rights as the children's father to commit the offense. The Fayette Circuit Court's order required that the children's mother maintain custody of their passports. [PSR ¶ 9.] Using his parental status, Qiu obtained duplicate Chinese passports for all three children without their mother's knowledge. [*Id.* ¶ 7.] Furthermore, the Fayette Circuit Court order permitted Qiu visitation rights with the children, including out-of-town visits upon party agreement. [*Id.* ¶ 9.] Qiu used this provision to negotiate an agreement to take the children on an out-of-state trip in July 2025. [*Id.* ¶¶ 7, 10.] Qiu then used the duplicate passports he obtained and the trip he negotiated to remove the children from the United States. [*Id.* ¶ 8.]

The Sixth Circuit, in the employment context, has emphasized that "the level of discretion . . . is to be the decisive factor in determining whether [the defendant's] position was one that can be characterized as a trust position." *United States v. Tribble*, 206 F.3d 634, 637 (6th Cir. 2000). A "trust relationship arises when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs." *United States v. Brogan*, 238 F.3d 780, 783 (6th Cir. 2001). That is precisely what happened in this case. Qiu's parental status, the Fayette Circuit Court order, and the parties' agreement afforded Qiu substantial discretion over care and custody of the children at the time of the kidnapping. Qiu was given the freedom to take the children out of state without supervision. This freedom enabled him to divert the children from the pretextual vacation he proposed and take them out of the United States undetected.

The trust placed in Qiu by the children's mother and the Fayette Circuit Court exposed them to this very risk.

Qiu raises another double-counting objection to this enhancement, arguing that it embodies conduct inherent in the offense to the extent it relies solely on his parental relationship with the children.  This argument fails for two reasons.

First, a parental (or even a familial) relationship with the victim is not an element an IPKCA violation.  The crime can be committed by "[w]hoever removes a child from the United States . . ." under circumstances that meet its other elements.  18 U.S.C. § 1804(a).  Individuals who have no familial relationship with the victim can be prosecuted for it.  *See generally United States v. Helbrans*, 547 F. Supp. 3d 409, 417-19 (S.D.N.Y. 2021), *aff'd sub nom. United States v. Malka*, No. 22-1680-CR, 2007 WL 10146084 (2d Cir. Apr. 8, 2025) (prosecution of various members of international religious community for IPKCA violations).  Neither the statute nor the base offense level under U.S.S.G. § 2J1.2(a) accounts for the use of a parental relationship to commit the offense.

Second, Qiu's abuse of a position of trust was based in part on his use of the legal rights conferred by his status as the children's father, and not merely his status itself.  This distinction was important in *Matusiewicz*.  There, the Third Circuit denied a double-counting argument similar to Qiu's, because the § 3B1.3 enhancement was based on the defendant's legal rights and status under a state court order.  *See* 402 F. App'x at 729 (affirming district court decision that father's status required "some level of trust between parents, at a very minimum, that they will adhere to the Family Court's orders and be

forthright with one another regarding important decisions in the life and care of their children."). Qiu similarly exploited his legal rights to commit the offense, as summarized above. He should receive a two-level enhancement for abuse of a position of trust.

## II.     Sentencing Hearing Witnesses

The United States anticipates calling FBI Special Agent Isaac Robison to testify about the investigation of this offense and the evidence supporting each of the three enhancements discussed above. The United States anticipates that Agent Robison's direct testimony will require approximately 30 to 45 minutes.

## III.     18 U.S.C. § 3553(a) Factors

Qiu has no criminal history and is a criminal history Category I. [*See* PSR ¶¶ 40-43.] Upon application of each of the three disputed offense level enhancements, Qiu's Sentencing Guidelines range is 27 to 33 months for each count. The United States seeks a sentence that includes a term of imprisonment at the high end of this range.

The sentence imposed should reflect the seriousness of Qiu's offense, promote respect for the law, provide just punishment, deter others, and protect the public. 18 U.S.C. § 3553(a)(2)(A), (B), and (C). Each of these factors necessitates a substantial term of incarceration.

The circumstances of this offense show that Qiu plotted for months to kidnap his children, remove them from the United States, and return them to China, putting them beyond the reach of the United States judicial system and their mother's custodial rights. Qiu agreed to an April 19, 2024 court order providing that the children would live with their mother in Fayette County, Kentucky, and that the mother would maintain the

children's passports during any visits with Qiu.  [PSR ¶ 9.]  On or about May 5, 2025, he secretly obtained duplicate Chinese passports for all three children.  [*See* PSR ¶ 7.]  He then solicited and obtained the mother's agreement to his taking the children on an out-of-state vacation.  [*Id.*]  Qiu agreed that he would drive with all three children to Disney World in Florida and then return them to their mother's custody.  [*Id.* ¶¶ 7, 10.]  Instead, he drove them into Mexico and boarded the first of a series of flights designed to take them to Beijing, China.  [*Id.* at ¶ 8.]

Between July 26, 2025 and July 28, 2025, Qiu and the children flew from Tijuana to Mexico City, from Mexico City to Havana, and from Havana to Panama City.  [*Id.*]  On July 28, 2025, as Qiu and the children boarded a flight bound from Panama City to Istanbul, Panamanian law enforcement authorities detected the kidnapping, detained Qiu, and placed the children in temporary foster custody.  [*See* PSR ¶ 8.]  The Panamanian authorities returned the children to their mother's custody upon her arrival in Panama.  [*Id.*]

Qiu's conduct reflected callous disdain for the parental rights of his children's mother, profound disrespect for the orders of the Fayette Circuit Court, and reckless disregard for the safety of his children.  His self-evident intent was to take the children permanently from the contact and care of their mother.  He would have removed the children and himself from the court's jurisdiction to enforce its family court orders.  His actions left the children stranded in the custody of a foreign government for days.  A sentence at the top of the guidelines range is necessary to punish these actions, address

Qiu's attempt to undermine a lawful court order, and protect the children and their mother from similar future conduct.

Furthermore, courts should endeavor to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  The most effective way to avoid such disparities is to sentence each defendant within the correctly calculated guideline range.  *See United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014).  "[O]ne of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices."  *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008).

The primary guideline under which Qiu is being sentenced is U.S.S.G. § 2J1.2. Over the last decade, Defendants sentenced under this guideline have received within-guidelines sentences in approximately 33% of cases, with similar numbers receiving downward variances not endorsed by the government.  *See* U.S.S.C. Interactive Data Analyzer, *at* *https://ida.ussc.gov/analytics/saw.dll?Dashboard* (filtered to reflect U.S.S.G. § 2J1.2 as primary guideline).  A sentence below or even at the low end of the guidelines range here would be inappropriate.  The consequences of Qiu's actions went beyond the mine-run types of harm accounted for in U.S.S.G. § 2J1.2.  He did not merely impede the administration of justice in his family court case; he created the risk of traumatic, permanent separation between mother and children, and he put those children in harm's way.  A sentence at the top of the guidelines range would avoid unwarranted

disparities with other defendants sentenced under U.S.S.G. § 2J1.2, while accounting for the additional harms caused by Qiu's conduct.

For these reasons, the United States asks the Court to impose a term of imprisonment at the high end of the relevant guidelines range.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to impose a term of incarceration of 33 months.

Respectfully submitted,

JASON D. PARMAN
FIRST ASSISTANT
UNITED STATES ATTORNEY

By:    s/ Andrew T. Boone
        Andrew T. Boone
        Assistant United States Attorney
        260 W. Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        (859) 685-4841
        FAX (859) 233-2747
        andrew.boone2@usdoj.gov

## CERTIFICATE OF SERVICE

On May 6, 2026, I caused this motion to be electronically filed through the ECF system, which will send the notice of electronic filing to counsel of record.

s/ Andrew T. Boone
Assistant United States Attorney