UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

CENTRAL DIVISION

LEXINGTON

CRIMINAL NUMBER 5:25-CR-108 KKC

UNITED STATES OF AMERICA,                                          PLAINTIFF

V.

HAO QIU,                                                         DEFENDANT

SENTENCING MEMORANDUM & OBJECTIONS

FACTUAL BACKGROUND

Hao Qiu is a native of the People's Republic of China ("PRC"), a former professional soccer player and coach, the owner of a small business located in California, and the father of three children under the age of 10, each of whom was born in PRC and each of whom lived with their father, grandparents, and mother, Claire Goodell, in PRC until late 2023. He has no criminal history and does have a U.S. green card.

Hao and Claire met in 2015 in PRC and married on October 8, 2015. Their first child was born in October in PRC. In 2017, the couple agreed to relocate to raise their family in Florida. But, after moving, they realized they could not survive on his earnings, and they returned to PRC to live with Hao's parents. Hao traveled back and forth from the U.S. to PRC, working as a soccer coach in Florida and North Carolina and then driver in California and then owner of a chauffeur business. He maintained his immigration status and green card by working. Claire studied online from PRC and attained a master's degree. The couple had a third child born in PRC.

In December of 2023, the Qiu family planned a Christmas visit to Claire's family in Kentucky. The visit is planned for one month, to include a trip to Disney. Once the family arrived in Dallas, Claire took the three children through a customs line for U.S. citizens. Hao and his parents were sent through a non-citizen line and as they reached officials in that line, they were informed that once they arrived in Kentucky, Hao would be served with an emergency protective order. Claire had filed paperwork accusing him of domestic violence. Agents in Dallas removed the children's passports.

According to an affidavit written and signed by Claire Goodell in the Fayette District court, this was a plan. Claire stated therein that "My caseworker at the Embassy, Crystal Waitekus, advised me to convince my husband that we go on a 'Christmas vacation,' which would allow me to escape. . . . when we arrived on U.S. soil, I filed for an EPO." On the day that she filed the petition, Claire also removed $37,500 from the couple's joint account, the life savings earned by Hao.

Hao was served with an emergency protective order. This EPO was dismissed by agreement on December 17, 2024. But the children were in Kentucky and once the children were on Kentucky soil, Kentucky asserted its sovereign right to decide custody. Cross-border custody disputes are frequently addressed through Hague Convention mechanisms designed to resolve competing jurisdictional and custodial claims between nations. Because the PRC is not a Hague Convention signatory, those remedies were unavailable.

Hao and the children were in Kentucky.

The couple subsequently separated and endured a year and a half of divorce and custody proceedings before the final property settlement agreement was entered into the record on June 12, 2024. The property settlement agreement provided for the parents to "share joint custody of the minor children of the marriage . . . both shall continue to have an active role in providing a sound social, economic, educational and moral environment for the child. (sic) The parents shall consult

with one another on substantial questions relation to educational programs, religious upbringing, significant changes in social environment and health care. The parties shall exert their best efforts to work cooperatively in making plans consistent with the best interests of their child (sic) and amicably resolving disputes as they arise." The parties agreed that no child support was pertinent for payment by either party, and they also agreed to time sharing of two weeks on/two weeks off per parent.

As with many divorces, the couple had a hard time living up to the civility goals of the property settlement. Accusations flew back and forth, requiring the intervention of the Fayette Circuit Court and the appointment of a guardian ad litem for the children.

In July of 2025, it was arranged with the permission of the court, the guardian ad litem, and the mother, that Hao and his parents would take the children to visit a Disney resort. There had initially been discussion of Disney Land in California, but it ultimately was agreed that Disney World in Florida would be the family destination. Hao, the children, and Hao's parents were the travelers. During the trip, Hao ensured the children maintained daily contact with their mother, calling, sending texts and photographs.

On July 25, 2025, Hao violated the Fayette Circuit Court's custody order and took the children out of the U.S. There is no dispute that he removed the children from the country, violated the custodial agreement, and thereby interfered with the parental rights of the mother. This is what he has pleaded guilty to and takes responsibility for.

OBJECTIONS

**Objection 1: Substantial Interference**

The defendant objects to the three-level enhancement for "substantial interference with the administration of justice" under USSG §2J1.2(b)(2), as set forth in Paragraphs 18, 24, and 30 of the Presentence Report.

This enhancement should not apply because the conduct relied upon by the government is not meaningfully distinct from the conduct inherent in the underlying offense of conviction. The Sixth Circuit has made clear that the government bears the burden of proving the applicability of a Guidelines enhancement by a preponderance of the evidence. United States v. Nicolescu, 17 F.4th 706, 725 (6th Cir. 2021).

Section 2J1.2(b)(2) requires "substantial interference with the administration of justice," which Application Note 1 defines to include, among other things, the "unnecessary expenditure of substantial governmental or court resources."

In cases where courts have applied §2J1.2(b)(2) in the context of international parental kidnapping, the enhancement has been supported by evidence of **extraordinary or unusual interference**, such as the inability to secure the return of children through normal legal channels or the presence of significant diplomatic barriers. See, e.g., United States v. Amer, 110 F.3d 873 (2d Cir. 1997). In contrast, the present case involves no such unusual complications. The recovery of the minors, while requiring resources, proceeded through ordinary law enforcement channels and achieved the precise objective of the investigation. Absent evidence of exceptional difficulty or disruption, the enhancement would improperly convert routine enforcement consequences into "substantial interference."

Here, the offense conduct—removing children from the United States in violation of a custody order—necessarily triggers law enforcement involvement, investigative activity, and the expenditure of governmental resources. Those consequences are not "additional" interference; they are the natural and unavoidable byproduct of the charged conduct. To apply §2J1.2(b)(2) on this basis would result in impermissible double counting, effectively punishing the defendant twice for the same conduct.

The government's reliance on the expenditure of $8,677.85 to recover the minors does not transform routine enforcement activity into "substantial interference." There is no evidence that the investigation was prematurely terminated, that judicial proceedings were corrupted, or that resources were expended in a manner meaningfully beyond what is typical for this type of offense. Without such a showing, the enhancement cannot stand.

Because the government cannot meet its burden of demonstrating interference that is qualitatively different from, and not inherent in, the underlying offense, the three-level enhancement under §2J1.2(b)(2) should not be applied.

**Objection 2: Vulnerable Victim**

International parental kidnapping inherently involves minor children. Because USSG §3A1.1(b)(1) requires that a victim be "unusually vulnerable," the government must show that the victim was more vulnerable than the typical victim of that offense. Courts have made clear that the enhancement cannot rest solely on class-based characteristics such as age.

Impermissible double counting occurs when the same aspect of a defendant's conduct is used to increase a sentence in more than one way. See United States v. Duke, 870 F.3d 397, 404. Here, the government relies on the victims' status as young children—an inherent feature of an international parental kidnapping offense—to support the enhancement. Using that same characteristic to increase the offense level constitutes improper double counting.

Courts have further explained that a condition which is a necessary prerequisite to the commission of an offense cannot, by itself, justify application of §3A1.1. As the Fifth Circuit explained, "[a] condition that occurs as a necessary prerequisite to the commission of a crime cannot constitute an enhancing factor under § 3A1.1. The vulnerability that triggers § 3A1.1 must be an

'unusual' vulnerability which is present in only some victims of that type of crime." <u>United States v. Moree</u>, 897 F.2d 1329, 1335.

Additionally, the enhancement generally requires proof that the defendant knew of the victim's unusual vulnerability and targeted or exploited that vulnerability. "The enhancement applies only if the defendant not only knew of the child, but also chose the child as a victim because of his vulnerability." <u>United States v. Jones</u>, 62 F.3d 851. There is no evidence here that the defendant selected or targeted the victims based on any unusual vulnerability; rather, the victims were the defendant's own children, as is typical in this type of offense.

If age alone were sufficient, the enhancement would apply in virtually every international parental kidnapping case, effectively reading the word "unusually" out of the Guideline.

The government's memorandum emphasizes emotional characterization, but the undisputed facts do not involve allegations of abuse, physical harm, violence, threats, coercion, or prolonged detention overseas. But what the facts show is that there was no abuse, physical harm, violence, coercion, threat, or prolonged overseas detention.

The Presentence Report relies solely on the victims' young ages—each under ten—to support the enhancement. But age alone, where it is inherent in the offense itself, does not establish that the victims were "unusually vulnerable" within the meaning of §3A1.1(b)(1). Because the government has not identified any additional characteristic rendering the victims more susceptible than the typical victim of international parental kidnapping, the enhancement should not apply.

**Objection 3: Abuse of a Position of Trust**

The two-level enhancement under USSG §3B1.3 should not apply because the government has failed to identify a qualifying "position of public or private trust" within the meaning of the Guideline.

Application Note 1 defines such a position as one "characterized by professional or managerial discretion," involving substantial judgment and significantly less supervision. The examples provided—attorneys, physicians, bank executives—confirm that §3B1.3 is intended to apply to **formal, discretionary roles that carry fiduciary-like responsibilities**, not ordinary personal relationships.

Here, the only "position" identified by Probation is the defendant's status as a **parent**. That cannot support the enhancement.

First, **parental status is an element inherent in the offense of international parental kidnapping under 18 U.S.C. § 1204**. The offense necessarily presupposes a parental or custodial relationship. Enhancing the sentence based on that same relationship constitutes impermissible double counting because it does not meaningfully distinguish the defendant's conduct from the typical commission of the offense.

Second, **a parental relationship is not the type of "professional or managerial" position contemplated by §3B1.3**. Parents do not occupy roles characterized by institutional discretion, fiduciary duties to third parties, or reduced supervision in the sense required by the Guideline. If parental authority alone were sufficient, the enhancement would apply in virtually every §1204 prosecution—an outcome the Sentencing Commission plainly did not intend. The Sixth Circuit has made clear that §3B1.3 applies only to positions involving "professional or managerial discretion," not ordinary relationships of trust. "[T]he notion of 'trust' embodied in the guideline is not the one contemplated by the ordinary dictionary concept of reliance or confidence for, in that sense, a bank trusts its tellers not to steal from the till. Rather, as used in the guideline, 'position of public or private trust' is a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary." US v. Ragland, 72 F.3d 500 (6th Cir. 1997).

Third, the government has not shown that any alleged "position of trust" **contributed in a significant way to facilitating or concealing the offense**, as required by Application Note 1. The alleged conduct—obtaining passports and misrepresenting travel plans—does not arise from specialized discretion or professional authority, but from ordinary parental access that is already baked into the statute.

Courts have consistently rejected application of §3B1.3 where the purported trust relationship is **coextensive with the underlying offense conduct** or lacks the hallmarks of professional discretion. The government bears the burden of proving the enhancement applies, and it has not done so here. There is no Sixth Circuit case that applies 3B1.3 to the situation involving parental control over children.

Indeed, the existence of an active custody dispute and court supervision demonstrates diminished trust between the parties, not the type of fiduciary discretion contemplated by §3B1.3.

Accordingly, the two-level enhancement under §3B1.3 should be rejected.

SENTENCING OBJECTIVES PURSUANT TO §3553

The Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Although the Government seeks a sentence at the high end of the Guidelines range, that request is not supported by the factual circumstances of this case, the statutory sentencing objectives, or the disputed guideline enhancements upon which much of the advisory range depends.

The government's request for a high-end sentence is driven primarily by enhancement theories that substantially increase the advisory range beyond the conduct inherent in the offense of conviction itself.

Hao Qiu is a native of the People's Republic of China who came to the United States after marrying an American citizen. He worked consistently, maintained lawful immigration status, earned

permanent resident status, and supported his wife and three children. He has no prior criminal history. Nothing in his background suggests a likelihood of future criminal conduct, nor is there any indication that he requires educational, vocational, medical, or correctional treatment.

The public is not at risk from future crimes by Mr. Qiu.

The Court should also consider the broader circumstances surrounding the offense. The children were born in the PRC, Mandarin is their native language, and the family's relocation to the United States in late 2023 occurred under difficult and highly contentious domestic circumstances that ultimately evolved into prolonged custody litigation.

Mr. Qiu has agreed to pay restitution. Although he has funds available in a Chase checking account, he presently lacks the practical ability to access and administer those funds while incarcerated. A shorter sentence would better position him to satisfy his restitution obligations and return to lawful employment.

The purposes of sentencing—including reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment—can be satisfied by a sentence of time served. Mr. Qiu has been incarcerated since July 28, 2025, in a county jail while separated from his family and operating with limited communication in a foreign country. He has accepted responsibility for his conduct, entered a guilty plea, and expressed remorse for the consequences of his actions. Additional incarceration beyond time served would be greater than necessary to accomplish the purposes of sentencing under § 3553(a).

Respectfully submitted,

/s/ Pamela D. Perlman

Pamela D. Perlman
PO Box 22107
Lexington, KY  40522
859 231-7572

CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing motion has been served on all parties of record via ECF this 6th day of May, 2026.

/s/ Pamela D. Perlman

Pamela D. Perlman